■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LASHAWN MORGAN, Respondent. [640 NYS2d 586] —Appeal by the People from an order of the Supreme Court, Queens County (Giaccio, J.), dated April 27, 1995, which granted those branches of the defendant's omnibus motions under Indictment Nos. 4816/94 and 5366/94, respectively, which were to

suppress physical evidence, identification testimony, and a statement made by the defendant to law enforcement officials.

Ordered that the order is reversed, on the law and the facts, and those branches of the defendant's omnibus motions which were to suppress the proffered evidence are denied.

According to the uncontroverted testimony presented by the prosecution at the suppression hearing, Police Officer Edward Santiago responded to an apartment building based on a report of a burglary in progress. He was met by the building superintendent, who advised him that the burglars had returned to an apartment in the same building, where one of them resided. Upon arriving at that apartment, Officer Santiago detained the defendant's juvenile accomplice, who resided in the apartment and who stated that "Lashawn's going out the window". The officer entered the apartment and observed an open window in the rear bedroom, as well as a yellow metal jewelry pin, a black box, a wrench, and screwdriver. The superintendent then informed him that the second burglar was fleeing down the fire escape, and supplied the officer with a physical description of the individual. Officer Santiago broadcast this description over his radio. Police Officer Charles Reiss, who was patrolling the area, heard the description and saw the defendant walking on the street near the apartment building. Since the defendant closely matched the broadcast description, Officer Reiss detained him and transported him back to the building in order to ascertain whether he was the person being sought. Officer Reiss' partner then entered the building and advised Officer Santiago that "we have another kid in the car". After determining that the jewelry pin and black box had been stolen in two separate burglaries, the officers exited the building with the superintendent following them. The superintendent then observed the defendant in Officer Reiss' police vehicle and immediately identified him as the second burglar. The defendant was placed under arrest, questioned regarding pedigree information, and transported to the station house. During the ride, and before *Miranda* warnings were administered to him, the defendant stated "I came by to pick up some stuff from Pee Wee." Officer Santiago understood "Pee Wee" to be a reference to the defendant's juvenile accomplice.

Following the hearing testimony, the Supreme Court heard oral argument on the suppression applications and then granted them, reasoning that there was no proof connecting the defendant to the charged crimes and that the physical evidence recovered from the juvenile's apartment "has no relevance to [the] defendant". This appeal by the People ensued. We reverse.

The defendant's jurisdictional argument is unpersuasive, inasmuch as the People's requisite CPL 450.50 (1) notice has been transmitted to our court. Contrary to the defendant's contention, the manner in which that statement was transmitted adequately complied with CPL 450.20 (8) and neither compromised the validity of the statement nor prejudiced him in any manner (see generally, People v Morales, 198 AD2d 129).

Turning to the merits, the Supreme Court erred in deciding the ultimate issue in the case, i.e., whether the defendant participated in the charged offenses, rather than determining the limited issue before it—whether the evidence was obtained in violation of the defendant's constitutional rights. Accordingly, the court's stated basis for granting suppression was invalid and improper (see, People v Johnson, 83 NY2d 831). Moreover, the court failed to set forth any findings of fact and conclusions of law in determining the defendant's motions, as required by CPL 710.60 (6) (see, People v Bonilla, 82 NY2d 825; People v Mendoza, 82 NY2d 415). However, since there is a complete hearing record before us, we have credited the testimony of the People's witnesses and have made our own findings and conclusions in accordance herewith (see, CPL 470.15 [1]; People v Lewis, 172 AD2d 1020; People v Gonzalez, 116 AD2d 661; People v Denti, 44 AD2d 44).

As the People correctly observe, the suppression of the physical evidence—consisting of the jewelry pin, the black box, the wrench, and the screwdriver—was error because the defendant lacked standing to contest the seizure of these items from the apartment of his accomplice. It is well settled that a defendant at a suppression hearing has the burden of proving standing by establishing that he has a personal legitimate expectation of privacy in the premises or area searched (see, People v Whitfield, 81 NY2d 904; People v Wesley, 73 NY2d 351). The defendant never attempted to demonstrate that he had any privacy interest in his accomplice's apartment, nor does the evidence adduced by the People suggest such an interest. Therefore, the defendant was without standing to challenge the admissibility of the proffered physical evidence (see, e.g., People v Rodriguez, 69 NY2d 159; People v Hernandez, 218 AD2d 167; People v Aguirre, 220 AD2d 438; People v Howard, 213 AD2d 903). In this regard, we reject the defendant's belated argument that the People failed to establish which apartment the items were recovered from, since the hearing testimony of Officer Santiago unequivocally identified the apartment, and the defendant's trial counsel never expressed any surprise or confusion with respect thereto.

The suppression of the superintendent's on-scene identification of the defendant was similarly erroneous. While that identification appears to have resulted from a police-sponsored procedure (*see generally, People v Dixon,* 85 NY2d 218), the hearing record supports the conclusion that the defendant was validly detained and returned to the crime scene and that the ensuing identification occurred in close temporal and geographical proximity to the crime (*see, People v Duuvon,* 77 NY2d 541; *People v Riley,* 70 NY2d 523; *People v Miranda,* 213 AD2d 560; *People v Thomas,* 213 AD2d 295; *People v McCoy,* 211 AD2d 732). Moreover, the fact that the defendant was handcuffed and seated in the police car at the time of the identification, does not require suppression under the circumstances of this case (*see, e.g., People v Duuvon, supra; People v Carney,* 212 AD2d 721).

Finally, the People sustained their burden of demonstrating that the statement made by the defendant prior to his receipt of *Miranda* warnings was spontaneous and not the result of police interrogation or its functional equivalent (*see, e.g., People v Lipscomb,* 214 AD2d 970, *cert denied* — US —, 116 S Ct 787; *People v Jackson,* 211 AD2d 490; *People v Pryor,* 194 AD2d 749; *People v Gonzalez,* 175 AD2d 137). Sullivan, J. P., Copertino, Pizzuto and Florio, JJ., concur.